**ALLECO, INC., Plaintiff,**

v.

**IBJ SCHRODER BANK & TRUST COMPANY, as Successor Trustee, Defendant,**

**and**

*Salomon Brothers, Inc., Intervenor.*

**SALOMON BROTHERS, INC., Intervenor/Counterclaim Plaintiff,**

v.

**ALLECO, INC. and Service America Corporation, Counterclaim Defendants.**

**IBJ SCHRODER BANK & TRUST COMPANY, Defendant/Counterclaim Plaintiff,**

v.

**ALLECO, INC., Service America Corporation, Lapides Corporation and LP Acquisition Corp., Counterclaim Defendants.**

Civ. No. 3-87-0802.

United States District Court,
D. Minnesota,
Third Division.

Aug. 16, 1989.

**1468**

George M. von Mehren, Squire, Sanders & Dempsey, Cleveland, Ohio, E. Timothy McAuliffe, Coudert Brothers, Washington, D.C., R. Walter Bachman, Lindquist & Vennum, and Richard A. Kaplan, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, Minn., for Alleco, Inc., Lapides Corp. and LP Acquisition Corp.

James B. Loken, Faegre & Benson, Minneapolis, Minn., and Arthur S. Linker, Roseman & Colin, New York City, for IBJ Schroeder Bank & Trust Co.

Christine B. Pendry, Davis, Polk & Wardwell, New York City, and Charles Quaintance, Jr., Maslon, Edelman, Borman & Brand, Minneapolis, Minn., for Service America Corporation.

Timothy D. Kelly, Kelly & Berens, P.A., Minneapolis, Minn., for Fidelity Management and Resource Co., amicus curiae.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

In September 1985, Allegheny Beverage Corporation issued $105 million in 9½% Convertible Senior Subordinated Debentures Due 2010. This dispute focuses on the interpretation of the Debenture Certificates and the accompanying Indenture. Within three years after these Debentures[1] were issued, the company changed its name to Alleco, Inc., sold off its operating subsidiaries, and dissolved.

Alleco sold its final subsidiary, Service America Corporation, via a leveraged buyout in December 1987. Service America, now a wholly-owned subsidiary of Servam Corporation, assumed the payment obligations on the Debentures. One of the issues before this court is whether Alleco has been released from its payment obligation by Service America's assumption and subsequent events.

Service America did not assume the Debentures' conversion obligation. This re-

---

**1.** Alleco has issued other debentures which are not relevant to this proceeding. Hereinafter, any reference to the term Debenture with an upper case "D" refers to Alleco's 9½% convertible debentures due 2010.

mained with Alleco. Alleco's controlling shareholder, Martin Lapides, commenced a tender offer for Alleco common stock in July 1988. This tender offer, accomplished through LP Acquisition Corporation, resulted in the merger of Alleco and LP Acquisition on October 18, 1988. A supplemental indenture provided, pursuant to section 15.-06 of the original Indenture, that all Debenture holders retained the right to receive $465 for each $1,000 in Debenture principal in lieu of the right to convert to the now extinct Alleco common stock.

Lapides dissolved Alleco on November 8, 1988. He assumed Alleco's assets and liabilities. However, he did not assume any obligations under the Debentures and Indenture. The other two issues before the court are whether the tender offer, merger and dissolution violated the antidilution provisions of the Indenture, and whether the dissolution released Alleco from the conversion obligation.

The court finds, for the reasons stated below, that Alleco remains liable for the payment and conversion obligations of the Debentures, and that the LP tender offer violated an explicit covenant of the Indenture. Therefore, Alleco's motion for summary judgment is denied, the motion of IBJ Schroder Bank & Trust Company for summary judgment is granted, and Service America's motion for summary judgment is denied as to Schroder's counterclaims, and granted as to the counterclaims of Salomon Brothers, Inc.

*Procedural background*

Alleco commenced this action on November 30, 1987 against the original trustee, First Trust Company. Alleco seeks a declaration that it was released from the payment obligation when Service America assumed that obligation.

Salomon Brothers, Inc., which owns $18,-575,000 principal amount of the Debentures, obtained permission to intervene, and filed a counterclaim seeking, inter alia, a declaration that Alleco remains liable for the payment obligation, and that Alleco is in default by the terms of the Indenture.

In May 1988, IBJ Schroder Bank & Trust Company succeeded First Trust as trustee,

and was also substituted as the defendant in this action. Schroder filed a counterclaim seeking a declaration that Alleco has not been released from its payment obligation.

The Lapides-sponsored tender offer for Alleco stock was announced on July 13, 1988. Shortly thereafter, Schroder notified Alleco that it believed that the proposed tender offer, merger, and dissolution would constitute a breach of Alleco's obligations under the Indenture. In response, Alleco filed an amended and supplemental complaint seeking, inter alia, a declaration that the proposed transactions would not violate the Indenture, and that the surviving corporation would be released from all obligations under the Debentures and Indenture.

Following this court's denial of Schroder's motion to preliminarily enjoin the Alleco tender offer, Schroder filed an amended answer and counterclaim which essentially mirrors the additional declaratory relief sought by Alleco in its supplemental complaint.

Now before the court are cross-motions for summary judgment. Alleco, with its affiliated companies, LP Acquisition Corporation and Lapides Corporation [hereinafter collectively referred to as Alleco] seek a declaration from this court that the various transactions noted above conformed with the terms of the Debentures and Indenture, as supplemented.

Schroder seeks summary judgment on its claims that Alleco remains obligated to honor both the payment and conversion obligations of the Debentures, and that the merger and dissolution constitute events of default as that term is defined by the Indenture. Salomon joins in this motion.

Service America, a counterclaim defendant, seeks summary judgment against the claims of Schroder and Salomon.

## FACTS

Prior to 1981, Alleco was solely a beverage company. Between 1981 and 1985, the company acquired businesses in food service, laundry service, building maintenance,

and retail office furniture. In May 1985 it sold its beverage operations and acquired Servomation Corporation. Alleco's smaller food service operations were consolidated with Servomation to form Service America.

The Debentures were issued in September 1985. Between December 1986 and July 1987, Alleco sold its building maintenance, laundry service, and retail office furniture subsidiaries for $86.5 million. The proceeds were used principally to pay down bank debt. Alleco paid no dividend and made no distributions to shareholders following these sales.

In May 1987, Alleco entered into a stock purchase agreement for the sale of its Service America subsidiary. The purchasing entity, SAC Acquiring Corporation, was a wholly-owned subsidiary of Servam Corporation, which was owned by certain senior management of Service America and other investors.

In order to facilitate this sale, Alleco commenced a tender offer for the redemption of the Debentures, including a five percent premium. This offer fell apart following the October 1987 stock market crash. Alleco and Servam then arranged for Service America to assume the Debentures.

The sale of Service America took place on December 2, 1987. By means of a leveraged buy-out, SAC paid $345 million in cash, and took over payments on the $105 million in Debentures. Along with that sale, Alleco, SAC, and First Trust executed a First Supplemental Indenture which provided that SAC would assume the payment obligation. By terms of the Second Supplemental Indenture, executed the same day, this duty was assumed by Service America. Responsibility for the Debenture's convertibility remained with Alleco.

Alleco believed that the terms of the original Indenture entitled Alleco to a release from any payment obligation once Service America assumed that duty. Accordingly, Alleco wanted the First Supplemental Indenture to provide for that release. First Trust did not agree with Alleco's interpretation of the Indenture, and

refused to execute a supplemental indenture which explicitly released Alleco.

The First Supplemental Indenture left unresolved the issue of Alleco's release. Alleco filed this action in order to obtain a declaration that it had been released.

Following the Service America sale, Alleco had approximately $130 million in cash which it intended to commit to other lines of business. Morton Lapides, Alleco's chairman of the board and chief executive officer held 21.6% of Alleco's equity through a family holding company, Lapides Corporation. Lapides also controlled a special class of stock which allowed him to elect a majority of Alleco's board. In May 1988, Lapides began to pursue a plan for the purchase of the Alleco common stock not held by Lapides. This resulted in the July 1988 tender offer by LP Acquisition Corporation, a Lapides subsidiary, for Alleco common stock at $10 per share.

The offering document for the tender outlined the planned merger of Alleco and LP, and the eventual dissolution of Alleco and distribution of its assets to Lapides. This "Offer to Purchase" states:

> In connection with such dissolution, the assets and liabilities of [Alleco] would be assumed by Lapides, and Lapides would continue to operate the business of [Alleco]. Lapides also intends to assume all of the Company's obligations under the indentures covering its outstanding subordinated indebtedness (other than the Convertible Debentures) and to pay such indebtedness ... in accordance with the terms of the indentures.

Linker aff., Ex. R at 14.

LP purchased the outstanding Alleco common stock for $67.5 million. Lapides contributed $2.5 million, and LP obtained a $65 million bridge loan from two banks. On October 18, 1988, LP and Alleco merged via a statutory short form merger. The bridge loan was then repaid using Alleco's own funds.

That same day, Alleco, Service America and Schroder, as successor trustee, executed a Third Supplemental Indenture. This supplement provided that the Debentures would be convertible into cash pursu-

ant to the formula established in Article Fifteen of the original Indenture. In other words, the right to convert to Alleco stock became the right to exchange each $1,000 in Debenture principal for $465 in cash. The Third Supplemental Indenture also reiterated that "the holder of any Debenture shall have the right, at his option, at any time prior to the close of business on September 1, 2010 ..." to make the conversion to cash, subject only to the Company's right to redeem the Debentures. Lapides aff., Ex. 18 at 7-8. The surviving corporation, which changed its name to Alleco, Inc., retained the responsibility to honor the conversion rights.

On October 21, Lapides notified all Debenture holders that Alleco would be voluntarily dissolved. Following dissolution, Lapides disclaimed any responsibility for the Debentures. All interest installments have been paid when due by Service America. Lapides takes the position that the conversion right expired shortly after Alleco dissolved.

## ANALYSIS

The court's jurisdiction over this matter is based on 28 U.S.C. § 1332, and venue is proper in this district.

As is often the case in a declaratory judgment action, the facts giving rise to this cause of action are not in dispute. The dispute concerns the application of the parties' contract—the Debentures and the Indenture—to the transactions described above.

The Eighth Circuit observed in *Trnka v. Elanco Products Co.*, 709 F.2d 1223, 1227 (8th Cir.1983), that "disputes involving the interpretation of unambiguous contracts are appropriate cases for the entry of summary judgment." This is particularly true when the interpretation of a standardized document like an indenture is involved. *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1048 (2d Cir. 1982), *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 482 (1983). The parties do not contend, and the court does not find, that the contract is ambiguous. Its inter-

pretation is quite properly a matter of law. *Id.*

The term "debenture" refers to a long-term unsecured debt security, issued pursuant to an indenture, and with an indenture trustee. The relationship between the issuer (debtor) and the debenture holders (lenders) is a matter of contract. The obligation to repay the debt runs directly from the issuer to the holders, and the other rights conferred by the indenture run from the issuer to the trustee for the benefit of the holders. *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 941-42 (5th Cir.1981), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981).

Convertible debentures, while primarily debt securities, contain an equity option. The conversion right is separate and distinct from the debt, and has its own ascertainable value. *Id.* at 942 (quoting American Bar Found., *Commentaries on Indentures* 522-23).

Before the court are three issues concerning Alleco's relationship with its Indenture Trustee and with its Debenture holders: first, whether Alleco has been released from its obligation to make payments on the Debentures; second, whether the LP tender offer and subsequent dissolution breached the terms of the Indenture; and third, whether the conversion feature of the Debentures has been extinguished.

### I. Payment obligation

Alleco contends that it was discharged from its payment obligation when Service America became the successor obligor under the First and Second Supplemental Indentures. Alternatively, Alleco argues that it was released upon its dissolution pursuant to section 12.02 of the Indenture.

Schroder responds that the original trustee, First Trust, never agreed to a novation, and therefore Alleco was not released from its payment obligation. Further Schroder contends that Alleco has not been released from this obligation because the Debenture certificates make no provision for Alleco's substitution or release.

It is elementary contract law that substitution and release are separate events.

Substitution does not discharge the obligor. Without a novation the obligee retains all rights against the obligor.

> [O]ne who is bound to any performance whatever ... cannot by any act of his own, or by any act in agreement with any other person than ... the one to whom his performance is due, cast off his own liability and substitute another's liability. If this were not true, obligors could free themselves of their obligations by the simple expedient of assigning them. . . . [T]he performance of the third party is the act of the promisor, who remains liable under the contract and answerable in damages if the performance be not in strict fulfillment of the contract.

*Crane Ice Cream Co. v. Terminal Freezing & Heating Co.*, 147 Md. 588, 128 A. 280, 283 (1925).

The Debenture holders and the Trustee entered into this contract in reliance on Alleco's promise to perform its obligations. Because there is no authority in the law of contract for Alleco's unilateral release from these obligations, Alleco's only grounds for release is the terms of the contract.

▆ Article Twelve of the Indenture provides for the sale or merger of Alleco. Specifically, section 12.01 states that "nothing contained in this Indenture or in any of the Debentures ... shall prevent any sale, conveyance or lease ... of all or substantially all of the property [2] of the Company, to any other corporation. . . ." This allowance for corporate flexibility, however, is conditioned on the proviso that:

> The Company hereby covenants and agrees, that upon any such consolidation, sale, merger, conveyance or lease, the due and punctual payment of the principal of and premium, if any, and interest on all of the Debentures, according to their tenor and the due and punctual performance and observance of all of the Covenants and Conditions of this Indenture to be performed by the Company, shall be expressly assumed, by supplemental indenture satisfactory in form to the Trustee ... by the corporation which shall have acquired or leased such property.

Indenture (Lapides aff., Ex. 1), § 12.01 at 83.

In other words, Alleco agreed that any successor corporation would assume all covenants and conditions of the Indenture, and that the form of the assumption must be acceptable to the Trustee. Section 12.01 does not mention release. Indeed, there is nothing in the Indenture which would require the Trustee to release Alleco following that sale. Alleco could not negotiate a release from First Trust, and since First Trust's refusal is not inconsistent with the terms of the Indenture, this court has absolutely no grounds for imposing a novation.

▆ Alleco argues, alternatively, that it was released from the payment obligation upon its dissolution, as allowed under section 12.02 of the Indenture.[3] This section

---

**2.** Whether the sale of Service America represented "substantially all" of Alleco's property is a matter vigorously disputed by the parties. However, this issue does not create a material factual dispute because its resolution is irrelevant to the outcome of the case. For purposes of this motion, the court accepts Alleco's contention that the sale of Service America constituted the sale of substantially all of Alleco's assets.

**3.** Section 12.02 of the Indenture provides in relevant part:

> *Successor Corporation to Be Substituted.* In case of any such consolidation, merger, sale, conveyance or lease and upon the assumption by the successor corporation, by supplemental indenture, executed and delivered to the Trustee and satisfactory in form to the Trustee, of the due and punctual payment of the principal of and premium, if any, and interest on all of the Debentures and the due and punctual performance of all of the covenants and conditions of this Indenture to be performed by the Company, such successor corporation shall succeed to and be substituted for the Company, with the same effect as if it had been named herein as the party of the first part. . . .
>
> In the event of any such consolidation, merger, sale, conveyance or lease, the person named as the "Company" in the first paragraph of this Indenture or any successor which shall thereafter have become such in the manner prescribed in this Article Twelve may be dissolved, wound up and liquidated at any time thereafter and such person shall be released from its liabilities as obligor and maker of the Debentures and from its obligations under this Indenture. Lapides aff., Ex. 1 at 84.

requires the successor to assume all of Alleco's obligations for these Debentures, and then allows Alleco to be released from these obligations upon its dissolution. The only provision for the release of Alleco from its obligations for these Debentures is found in this section.

Following the sale of Service America, Alleco remained liable to the Debenture holders for any failure of Service America to make payments. Further, Alleco explicitly covenanted in the First Supplemental Indenture to honor the conversion obligation of the Debentures. Lapides aff., Ex. 6, § 3 at 6. That is, the Debentures continued to be convertible to Alleco common stock per the agreed formula. Alleco also explicitly covenanted in the First Supplemental Indenture to continue to be bound by Section 5.05 of the Indenture. *Id.*, § 4(d) at 12. Section 5.05 prohibits Alleco from, inter alia, redeeming any shares of its capital stock unless certain financial criteria were first satisfied.

The court finds, based on the language of section 12.02 that a condition precedent to Alleco's release was the assumption by Service America of all covenants and conditions of the Indenture. The section requires the execution of a supplemental indenture by which a successor corporation assumes the due and punctual payment of principal, premium, if any, and interest, "and the due and punctual performance of all the covenants and conditions of this Indenture to be performed by the Company...." The section then allows for a release upon dissolution. There is no provision for a partial release.

As noted above, Service America did not assume certain major obligations. Not having met the requirement that the successor assume all obligations, there is no reason to consider what follows—release. This section, and sections like it, provide issuers with flexibility. In return, such sections assure the holders that the issuer will provide for its covenants. This dispute is a case in point. Alleco arranged for Service America to make payments, but made no provision for its conversion obligation. In fact, Alleco repudiated that obli-

gation. This is precisely the type of misconduct against which section 12.02 was intended to protect.

In conclusion, because Alleco failed to provide a successor to assume all of its obligations, it is not entitled to a release of any of its obligations. Alleco remains accountable for the due and punctual payment of the principal, premium, if any, and interest on the Debentures.

■ Schroder contends that Alleco cannot be released from the payment obligation because the Debenture certificates make no provision for Alleco's release. Alleco responds that the Debentures require "the Company" to make payments, and that Article Twelve of the Indenture defines the conditions under which a successor may become "the Company."

Alleco does not dispute that the Debentures fail to provide the holders with any notice of Alleco's potential release or the circumstances under which such release may be obtained. In fact, each Debenture states:

No reference herein to the Indenture and no provision of this Debenture or of the Indenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of and any premium and interest on this Debenture at the place, at the respective times, at the rate and in the coin or currency herein prescribed.

Lapides aff., Ex. 1 at 5.

Further, the Debentures provide only one definition of "Company":

**ALLEGHENY BEVERAGE CORPORATION,** a corporation duly organized and existing under the laws of the State of Maryland (herein called the "Company")....

*Id.* at 1. The document gives no notice that a party other than Alleco may take over the duties of the obligor.

These Debentures are a "certificated security" under section 8–102(1)(a) of the Maryland Commercial Code. Section 8–202(1)(c) allows such a security to incorporate the terms of an indenture by reference, but only "to the extent that the terms

referred to do not conflict with the terms stated on the certificated security...." Here, the Indenture's provisions for substitution and release are, by omission, inconsistent with the terms of the Debenture.[4] In sum, regardless of the above interpretation of Article Twelve of the Indenture, any claim of release is ineffective because of Alleco's failure to disclose this possibility on the face of the Debentures.

## II. Tender Offer and Merger

■ Pursuant to a successful tender offer, LP Acquisition Corporation purchased the outstanding shares of Alleco common stock for $67.5 million. The two companies merged, and the new company was named Alleco, Inc. The following day, Alleco repaid a bridge loan of $65 million taken out by LP to finance the purchase of Alleco common stock. There is no dispute that the funds used to repay this loan were assets of the former Alleco, Inc. prior to the merger.

Schroder contends that this series of transactions violated section 5.05(a) of the Indenture.[5] This section allows Alleco to pay dividends or make distributions to shareholders, or to redeem its capital stock only if the company can first satisfy certain financial requirements.

Alleco does not contend that it satisfied the requirements of section 5.05 at the time of the tender offer. It contends that the section does not apply because LP, not Alleco, purchased Alleco's common stock. In essence, Alleco asks the court to ignore the substance of these transactions, and look only at their form.

Such sections are common. They protect debenture holders from the dissipation of corporate assets to shareholders, thus maintaining the capacity of the issuer to make payments and preventing the issuer from diluting the value of a conversion feature. If the court were to accept Alleco's argument, then sections like 5.05 would provide little or no protection for debenture holders. According to Alleco, establishing a shell corporation is all that is necessary to sidestep an obligor's promise to maintain its assets.

LP's tender was in effect a self-tender. Alleco cash was used to purchase Alleco shares. As a result of these transactions, Alleco's primary shareholder received a huge distribution of Alleco assets. This is precisely the result intended by Lapides when he initiated the tender offer, and this

---

**4.** The comments accompanying the American Bar Association's *Model Simplified Indenture* are consistent with the commercial code. The model indenture's section on mergers, consolidations or sales does not provide for the release of the original issuer. According to the comments:

> Issuers objecting to such continuing liability, or concerned that such liability may make it difficult to liquidate (or to proceed as an investment company) following a sale of assets, should change the last paragraph of this Section and *consider appropriate summary disclosure in the form of Security.*

*Model Simplified Indenture*, § 5.01 comment 6, 38 Bus.Law. 741, 791 (1982) (emphasis added).

**5.** Section 5.05(a) provides:

> *Restrictions on Dividends and Redemption of Capital Stock.* No dividend whatever shall be declared or paid nor shall any distribution be made on any capital stock of the Company (except in shares of capital stock of the Company), nor shall any shares of capital stock of the Company be acquired or redeemed by the Company or any Subsidiary, unless after giving effect to such dividend, distribution, ac-

quisition or redemption, the aggregate payments for all such purposes subsequent to June 30, 1985 would not exceed the sum of (A) 50% of the Net Income of the Company (determined on a cumulative basis) for the period commencing July 1, 1985 and ending on the last day of the immediately preceding calendar month (or in the event that such Net Income (determined on a cumulative basis) is a negative amount, 100% of such Net Income); (B) the aggregate of the net proceeds received by the Company from the sale for cash or other property (including issuance in any merger, consolidation or similar transaction) of shares of its capital stock subsequent to September 1, 1985; (C) the aggregate of the net proceeds received by the Company from the issuance of the Debentures or the issuance of sale of any other debt obligation of the Company, which Debentures or debt obligation shall have been converted into shares of Common Stock of the Company after September 1, 1985; and (D) $12,000,000.00.

Lapides aff., Ex. 1 at 40. As noted previously, Alleco reaffirmed its obligations under this section in the First Supplemental Indenture, § 4(d).

is precisely the conduct which section 5.05 prohibits.

If sections like 5.05 are to have any meaning, courts must consider the substance of the disputed transaction. "[W]hat cannot be legally done in one act does not necessarily become legal when the act is split up into various steps, all seeking and attempting to do in final result, what the one act might have accomplished." *In re Associated Gas & Elec. Co.*, 61 F.Supp. 11, 28 (S.D.N.Y.1944) (issuer violated indenture by executing many partial sales of assets in derogation of covenant to not sell substantially all of its assets), *aff'd*, 149 F.2d 996 (2d. Cir.), *cert. denied sub nom.*, 326 U.S. 736, 66 S.Ct. 45, 90 L.Ed. 439 (1945). *See also Mayor of Baltimore v. Bio Gro Systems, Inc.*, 300 Md. 248, 477 A.2d 783, 787 (1984) (city cannot do indirectly what it is prohibited from doing directly).

In sum, the tender offer and merger violated the terms of section 5.05. Under section 7.01(d) [6] of the Indenture, Alleco's failure to honor section 5.05 constitutes an event of default.

### III. Conversion Obligation

■ The Third Supplemental Indenture, executed on October 18, 1988 following the merger of LP and Alleco, provides that "each Debenture shall be convertible into, and only into, cash in the manner provided in Article Fifteen of the Amended Original Indenture, as amended and supplemented by this Third Supplemental Indenture." Lapides aff., Ex. 18 at 7. Section 15.06 of the original Indenture provides for the convertibility of the Debentures in the event of a merger or similar transaction. It requires the successor corporation to execute a supplemental indenture "providing that each Debenture shall be convertible into the kind and amount of shares of stock and other securities or property or assets (including cash) ..." which the holder would have received had he converted such Debentures immediately prior to the merger. Lapides aff., Ex. 1 at 93–94.

LP offered $10 cash for each share of Alleco common stock, and the Debentures are convertible to 46.5 shares of Alleco common stock. Therefore, the Third Supplemental Indenture transformed the conversion feature into the right to receive $465 cash for each $1,000 in Debenture principal. This supplement also reaffirmed section 15.01 of the Indenture concerning each Debenture holder's right to convert at any time prior to the close of business on September 1, 2010, subject only to the company's right to redeem the Debentures prior to that date. Lapides aff., Ex. 18 at 7–8.

Alleco contends that the conversion feature was extinguished upon Alleco's dissolution. However, there is absolutely nothing in the original Indenture or the supplements which allows the company or a suc-

---

**6.** Section 7.01 of the Indenture provides in relevant part:

*Events of Default.* In case one or more of the following Events of Default ... shall have occurred and be continuing:

.   .   .   .   .

(d) failure on the part of the Company duly to observe or perform any other of the covenants or agreements on the part of the Company in the Debentures or in this Indenture continued for a period of sixty days after the date on which written notice of such failure, requiring the Company to remedy the same, shall have been given to the Company by the Trustee, or to the Company and the Trustee by the holders of at least twenty-five percent in aggregate principal amount of the Debentures at the time outstanding;

.   .   .   .   .

then and in each and every such case, unless the principal of all of the Debentures shall have already become due and payable, either the Trustee or the holders of not less than twenty-five percent in aggregate principal amount of the Debentures then outstanding hereunder, by notice in writing to the Company (and to the Trustee if given by Debentureholders), may declare the principal of all the Debentures and the interest accrued thereon to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, anything in this Indenture or in the Debentures contained to the contrary notwithstanding. . . .

Lapides aff., Ex. 1 at 46–47.

cessor to repudiate its conversion obligation. Section 12.02 of the Indenture provides for a release upon dissolution if a successor has assumed all obligations and covenants under the Indenture. No successor assumed the conversion obligation.

Alleco argues that section 15.10 of the Indenture provides grounds for the extinguishing of its conversion obligation. However, this section is nothing more than a notice provision. It simply allows holders to exercise their conversion rights prior to certain events, including a dissolution. It does not provide any warning to holders of the possible loss of their conversion rights upon dissolution. Lapides aff., Ex. 1 at 95–96.

■ A corporation cannot obtain a release from its obligations by means of a voluntary dissolution, especially when a purpose of the dissolution is the avoidance of an undesirable contract. 16A Fletcher's Cyclopedia of Corporations § 8120 at 375–76 (1988 rev. ed.). Such is the case here. The offering document for the LP tender revealed Lapides' intent to repudiate all obligations to these Debenture holders following Alleco's dissolution.

The Indenture explicitly provides that the right to convert is exercisable until the year 2010. The repudiation of this right is without foundation in the parties' contract. In sum, Alleco remains liable for the convertibility of these Debentures, per its undertaking in Article Fifteen of the Indenture, as supplemented by the Third Supplemental Indenture.

## IV. Other Matters

Schroder asks the court to dismiss without prejudice its second and fourth counterclaims. Its second counterclaim, seeking to enjoin the LP tender offer, merger, and dissolution, is now moot. The fourth counterclaim alleges violations of the Maryland Uniform Fraudulent Conveyances Act. Md.Com.Code Ann. §§ 15–201 *et seq.*

■ Alleco objects, arguing that instead of dismissal the court should grant Alleco summary judgment against these counts.

Alleco's argument is that since Alleco has been released from its obligations on these Debentures, the holders are no longer creditors of Alleco. If not creditors, therefore, they can have no claim under the Act. However, since Alleco has not been released, the holders remain creditors of Alleco. Summary judgment, therefore, is not warranted.

The decision to grant a voluntary dismissal, pursuant to Fed.R.Civ.P. 41(a)(2), is a matter committed to the sound discretion of the trial court. *Holmgren v. Massey–Ferguson, Inc.*, 516 F.2d 856, 857 n. 1 (8th Cir.1975). Given the developments since Schroder filed its counterclaim, these two counts now encompass issues and parties beyond this litigation. The court, therefore, will grant Schroder's motion to dismiss these counts without prejudice.

Based on the stipulation of the parties, and pursuant to Fed.R.Civ.P. 24, Salomon Brothers, Inc. was permitted to intervene as a party defendant in January 1988. Salomon filed counterclaims seeking declaratory relief similar to that sought by Schroder, seeking certification of a class, and seeking imposition of a constructive trust on Service America's assets.

Salomon filed its counterclaims prior to Schroder's appointment as successor trustee. Salomon has since indicated its satisfaction with Schroder's protection of the Debenture holders' interests. Correspondingly, Salomon has been less vigorous in its pursuit of its counterclaims.

■ The "no action" clause of the Indenture, section 7.04,[7] restricts the rights of holders of less than twenty-five percent of the aggregate principal amount of the Debentures to bring suit on their own. Salomon holds approximately 19% of the Debentures principal. Under this section, therefore, Salomon may bring suit only to enforce its right to payment or its conversion right. Accordingly, Salomon's counterclaims for class certification and constructive trust are dismissed for failure to comply with the terms of section 7.04.

---

7. Lapides aff., Ex. 1 at 51–52.

Service America has made all payments when due. Salomon counts related to payment, therefore, fail to state a claim. In any event, these claims have been fully presented by Schroder as trustee. Salomon has pled no count related to the conversion right. In sum, two of Salomon's counterclaims are barred by the terms of the Indenture, and the counts on which direct action is permitted fail to state a claim.

## CONCLUSION

Though complicated by the amount in controversy, this is a relatively simple case. Alleco and its controlling shareholder have flaunted the Indenture, and have pursued these schemes with utter disregard for the rights of the Debenture holders. This conduct violated numerous terms of the Indenture. Consistent with Article Seven of the Indenture, Alleco has defaulted on its obligations to its Debenture holders.

Accordingly, IT IS ORDERED that:

1. The motion of Alleco, Inc., LP Acquisition Corporation, and Lapides Corporation for summary judgment is DENIED;

2. The motion of IBJ Schroder Bank & Trust Company for summary judgment is GRANTED, as follows:

   a. Judgment is entered in favor of Schroder and against Alleco, Service America, Lapides and LP, dismissing with prejudice the original Complaint and the First Amended and Supplemental Complaint in this matter,

   b. Further, judgment is entered in favor of Schroder on its First Counterclaim and against Alleco, Service America, Lapides and LP, declaring that Alleco is not released from liability for the payment of principal and interest on Alleco's 9½% Convertible Senior Subordinated Debentures Due 2010 in the principal amount of $105 million, and

   c. Further, judgment is entered in favor of Schroder on its Third Counterclaim and against Alleco, Service America, Lapides and LP, declaring that LP's acquisition on September 14, 1988 of Alleco's publicly-held common stock through a tender offer by LP, the merger of Alleco

with and into LP on October 18, 1988, and the dissolution of the surviving corporation and the distribution of its assets to Lapides on November 8, 1988, constituted a repudiation of Alleco's obligations under the Debentures and under the Indenture, dated as of September 1, 1985, between Alleco and the original trustee, First Trust Company, Inc., and a breach of the covenants contained in Section 5.05 of the Indenture, giving rise to an Event of Default under the Indenture and permitting Schroder properly to give written notice of default and to declare the principal of all the Debentures and the interest accrued thereon to be immediately due and payable.

3. The motion of Service America Corporation for summary judgment is DENIED with respect to the counterclaims of IBJ Schroder Bank & Trust Company, and GRANTED with respect to the counterclaims of Salomon Brothers, Inc., and Salomon's counterclaims are DISMISSED; and

4. The second and fourth counterclaims of Schroder's First Amended and Supplemental Complaint and Counterclaims are dismissed without prejudice pursuant to Fed.R.Civ.P. 41(a)(2).

LET JUDGMENT BE ENTERED ACCORDINGLY.