639 A.2d 173

ALLECO, INC., et al.

v.

The HARRY & JEANETTE WEINBERG
FOUNDATION, INC., et al.

No. 1052, Sept. Term, 1993.

Court of Special Appeals of Maryland.

April 5, 1994.

Dale A. Cooter (Donna S. Mangold, and the Cooter Law Firm, on the brief), Cheverly, for appellants.

Angus R. Everton (Robert C. Morgan, Diane S. Deros and Mason, Ketterman & Morgan, on the brief), Baltimore, for appellees, Weinbergs, and Siegel.

William L. Gardner (Laurie B. Adams and Morgan, Lewis & Bockius, on the brief), Washington, DC, for appellees, Marks and Kalb, Voorhis & Co.

Argued before WILNER, C.J., and MOYLAN and DAVIS, JJ.

WILNER, Chief Judge.

Alleco, Inc. and Morton Lapides filed an amended complaint in the Circuit Court for Prince George's County against The Harry and Jeanette Weinberg Foundation, Inc., Bernard Siegel, Nathan Weinberg, William Weinberg, Stanley Marks, and Kalb, Voorhis & Co. This appeal, by Alleco and Lapides, is from an order dismissing the amended complaint for failure to state a claim upon which relief could be granted.

The amended complaint, which we shall refer to hereafter as the complaint, arises ultimately from the alleged misconduct of Lawrence Weisman who, from September, 1986 to July, 1988, served as counsel for appellants. Weisman died before the complaint was filed and his estate was not sued. He is alleged to have entered into an agreement with Harry Weinberg and the appellees to breach his fiduciary obligations to appellants by disclosing to them certain confidential information that he obtained from appellants while serving as their attorney, concerning their business affairs and intentions. Pursuant to that agreement, according to appellants, the Weinbergs and Siegel, individually and on behalf of the Weinberg Foundation, and Marks, individually and on behalf of Kalb, Voorhis, (1) used that information to trade in Alleco securities, and (2) further assisted Weisman in breaching his fiduciary obligations to appellants by instituting or continuing certain litigation against appellants and thwarting appellants' efforts to settle other litigation. Weisman was alleged to have communicated information concerning appellants to the SEC, the FBI, and the Justice Department, and, at his request, Marks was alleged to have written to the SEC.

Like Weisman, Harry Weinberg died before the complaint was filed and his estate was not sued. The other appellees were charged with aiding and abetting Weisman in committing a breach of his fiduciary duties to appellants (Count I), civil conspiracy with Weisman to breach his fiduciary duties (Count II), aiding and abetting Weisman in committing fraud on

appellants (Count III), and civil conspiracy with Weisman to commit fraud (Count IV).

In an opinion filed June 8, 1993, the circuit court examined each of the allegations made in the 86–paragraph, 34–page complaint against each of the appellees and concluded from that examination that none of the four counts sufficed to state a cause of action. In essence, it found a mismatch between the allegations of wrongful conduct and the averments as to harm—that, to the extent appellants sufficiently alleged tortious conduct on the part of appellees, they failed to allege how that conduct caused appellants any harm, and to the extent they alleged harm arising from appellees' conduct, the conduct causing that harm was not tortious. Appellants, of course, take issue with those conclusions. Essentially, they complain that the court failed to consider the various averments in context with one another but instead improperly parsed the complaint and looked at each allegation in isolation.

Although we think the court went astray in some of its subordinate legal conclusions, we believe that it ultimately reached the right result, and so we shall affirm.

## DISCUSSION

### A. Aiding and Abetting

In Count I, appellees were charged with aiding and abetting Weisman in the breach of *his* fiduciary duty of loyalty to appellants. In Count III, they were charged with aiding and abetting Weisman in perpetrating fraud on appellants. The court observed, and we agree, that Maryland has yet to recognize an independent tort of aiding and abetting a tortfeasor. A person, under appropriate circumstances, might be criminally liable for aiding and abetting a fraud; he or she may be liable under Federal or State securities laws or regulations for using confidential information gained from an insider; he or she may be civilly liable as a *joint* tortfeasor for participating in tortious conduct or, as we shall shortly explain, as a participant in a civil conspiracy; but no separate

tort liability exists in this State for simply aiding and abetting someone else in committing a tort.

That, really, is the end of Counts I and III. Appellants have not charged appellees in those Counts with being joint tortfeasors with Weisman but only with assisting him in committing his own torts. If that is to be recognized as a new, independent tort, either the Legislature by statute or the Court of Appeals by extending the common law will have to do it. We shall not do it.

The circuit court, having reached that same conclusion, nonetheless noted that the Federal courts and some State courts have imposed civil liability for aiding and abetting a tortfeasor, at least with respect to the violation of Federal securities laws and regulations, and proceeded to examine the various averments made by appellants in light of how that tort has been defined in those cases. Indeed, that examination comprises most of the court's opinion and most of appellants' brief in this Court. It is, however, irrelevant. Until either the Legislature or the Court of Appeals creates the tort in Maryland, it would serve no purpose to expound upon how the elements of the tort should be defined. Counts I and III were properly dismissed because they fail to state a claim upon which, under current Maryland law, relief can be granted.

## B. Conspiracy

### (1) *Allegations of the Complaint*

In Count II, appellants charge that Weisman, in violation of his fiduciary duty to appellants, entered into an agreement with Harry Weinberg and appellees "to wrongfully breach his fiduciary duty owed to [appellants]." In furtherance of that conspiracy, appellees used confidential information communicated to them by Weisman, either directly or through Harry Weinberg, to trade in Alleco securities, "coordinated" their trades with Weisman, and, in concert with Weisman and in violation of his fiduciary duty, instituted litigation against appellants and thwarted appellants' attempts to settle other litigation.

Among a myriad of allegations scattered in earlier parts of the complaint are accusations that (1) Weisman profited on his inside information by buying Alleco securities through Marks and Kalb, Voorhis, (2) Weisman and Harry Weinberg agreed to coordinate their interests and keep each other informed, (3) when apprised of Alleco's plan to have a subsidiary assume Alleco's obligation on certain debentures, Weisman or Harry Weinberg contacted a large holder of those debentures in an effort to force Alleco to remain liable on its bonds, (4) Weisman joined in an existing action against Alleco (the exact nature of which is not revealed in the complaint but which apparently involved the Alleco debentures) and, when Weisman was forced by a court to withdraw from that suit, Harry Weinberg agreed to join or continue the action, (5) Weisman met with personnel from the SEC and communicated information concerning appellants to that agency, (6) at Weisman's direction, Marks sent a letter to the SEC accusing Alleco and Lapides of securities fraud, (7) these communications caused the SEC to commence or expand an investigation of appellants, and (8) Weisman also conveyed information concerning appellants, the nature of which is not revealed, to the FBI and the Justice Department.

### (2) *Analysis by the Circuit Court*

Citing *Green v. Wash. Sub. San. Comm'n*, 259 Md. 206, 269 A.2d 815 (1970), the circuit court defined a civil conspiracy as the combination of two or more persons by an agreement to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself unlawful that results in harm to the plaintiff. Citing *GAI Audio of N.Y. v. C.B.S.*, 27 Md.App. 172, 340 A.2d 736 (1974), *Carr v. Watkins*, 227 Md. 578, 177 A.2d 841 (1961), and *Yousef v. Trustbank Savings, F.S.B.*, 81 Md.App. 527, 568 A.2d 1134 (1990), the court then concluded that, in order to hold a person liable as a member of a conspiracy, the plaintiff must show that *that person* committed some unlawful overt act in furtherance of the conspiracy.

The court then examined the allegations of the complaint to see what unlawful and harmful overt act each appellee was

alleged to have performed in furtherance of a conspiracy to have Weisman violate his duty of fidelity, and it essentially found none.

In considering Count II, the court concluded that:

"[T]he only actionable breach of fiduciary duty committed by Weisman was Weisman's sharing of confidential information with the SEC and the FBI during his representation of Alleco and Lapides. Therefore, *only a conspiracy to commit this act* would be actionable. No defendant can be held liable for trading stock, receiving confidential information, or participating in lawsuits under the circumstances alleged in the amended complaint."

(Emphasis added).

The court's conclusion that no liability would exist for the trading in Alleco securities rested on its earlier determination that, absent an allegation that appellees purchased any securities from appellants or that appellants were also trading in those securities at the same time, appellants had failed to allege any harm to them from that conduct. The conclusion that no liability ensued from the lawsuits stemmed from the determination that appellees had a right to file or continue such suits, which were aimed at requiring Alleco to live up to its commitment under the debentures, and that such conduct was not, therefore, unlawful. The court's disinclination to find liability arising from Weisman's letters to the Government agencies arose from its determination that nothing appellees did had any bearing on Weisman's sending those letters and therefore could not have been in furtherance of any conspiracy emanating from the improper disclosure of confidential information.

### (3) *Our Analysis*

We think that the court erred in its subsidiary conclusions that (1) a member of a conspiracy cannot be held civilly liable unless he or she personally committed an unlawful act in furtherance of the conspiracy that itself caused harm to appellants, and (2) no harm can result to a corporation from using

improperly obtained confidential information to trade in its securities unless those securities were purchased from or sold to the corporation or unless the corporation was itself trading in its securities at the same time. We also believe, however, that *this complaint* fails to allege, sufficiently, the unlawful conduct and harm necessary to state a cause of action for civil conspiracy.

To develop this, we need to start with the nature of a civil conspiracy.

The Court of Appeals has often used the term "civil conspiracy" and has recognized it as though it were an independent tort. It is, however, a term that is more confusing than descriptive. The confusion stems, in part, from the fact that the word "conspiracy" is also used to characterize certain criminal conduct, but the elements necessary to give rise to criminal liability are quite different than those required for civil liability. It is confusing as well because, as defined in the civil context, it has more to do with the nature and extent of joint tortfeasor liability than with defining as tortious an area of conduct that would not otherwise be regarded as tortious.

The gist of a *criminal* conspiracy is an agreement between two or more persons to commit another crime. The crime of conspiracy is complete when the unlawful agreement is reached; no overt act in furtherance of the agreement is necessary. *Williams v. State,* 329 Md. 1, 7 n. 1, 616 A.2d 1275 (1992), citing *Apostoledes v. State,* 323 Md. 456, 461–62, 593 A.2d 1117 (1991). That is not the case with a civil conspiracy; indeed, a converse rule applies. The gist of a civil conspiracy is not the agreement but rather the overt conduct committed pursuant to it and the harm that flows from that conduct. It is a very different kind of animal, but one that borrows from its criminal cousin the notion of mutual agency and joint liability.

The Court of Appeals first discussed and essentially defined the tort in *Kimball v. Harman,* 34 Md. 407 (1871). It was then regarded as an action on the case, which lay solely for consequential damages. At 409, the Court stated:

"There is no doubt of the right of a plaintiff to maintain an action on the case against several for conspiring to do, *and actually doing,* some unlawful act to his damage. But it is equally well-established, that no such action can be maintained unless the plaintiff can show that he has in fact been aggrieved, or has sustained actual legal damage by some overt act, done in pursuance and execution of the conspiracy.... It is not, therefore, for simply conspiring to do the unlawful act that the action lies. It is for doing the act itself, and the resulting actual damage to the plaintiff, that afford the ground of the action. *Indeed, the allegation of conspiracy by the defendants would seem to be immaterial as to the right of action.*"

(Emphasis added).

Following from this premise, the Court held, at 410–11:

"[A]n act which, if done by one alone, constitutes no ground of action on the case, cannot be made the ground of such action by alleging it to have been done by and through a conspiracy of several. The quality of the act, and the nature of the injury inflicted by it, must determine the question whether the action will lie....

The fact of conspiracy is a matter of aggravation, and, as we have before stated, it only becomes necessary, in order to entitle the plaintiff to recover in one action against several, that the fact of the combination or conspiracy should be proved."

■ That view of a civil conspiracy—essentially a doctrine of joint tortfeasor liability—has not changed over the years. Subsequent cases have confirmed that it is the unlawful conduct causing harm to the plaintiff, not the agreement spawning the conduct, for which recovery is allowed. The conduct itself must be unlawful and the harm must flow from that conduct. *See,* for example, *Miller v. Preston,* 174 Md. 302, 311–12, 199 A. 471 (1938): "The test of a [civil] conspiracy in this state is whether the acts complained of are unlawful and the plaintiff, as the result of such unlawful acts, has been

damaged; but it is not actionable if the damage comes from a lawful act or series of lawful acts of the conspirators."

In *Green v. Wash. Sub. San. Comm'n, supra,* 259 Md. at 221, 269 A.2d 815, the Court defined a civil conspiracy as "a combination by two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." That definition followed language the Court had used earlier in *Bachrach v. United Cooperative,* 181 Md. 315, 325, 29 A.2d 822 (1943). We do not read either of those cases, however, as dispensing with the absolute requirement that there be unlawful conduct committed in furtherance of the agreement. The unlawful conduct may be in the means used to achieve an overall end that is not itself unlawful or it may be in the achievement of an unlawful end, but it must be one or the other. An agreement to achieve an unlawful end is not actionable on its own; nor is it actionable if the only conduct in furtherance of the agreement is not itself unlawful.

After accepting these general principles, the court determined that, in order to hold a person liable as a member of a civil conspiracy, the plaintiff must show that *that person* committed an unlawful overt act in furtherance of the conspiracy that itself caused harm to appellants. It then examined the various averments to see what overt act each appellee was alleged to have committed that was (1) in furtherance of the agreement, (2) unlawful, and (3) harmful to appellants. This is the first instance in which the court went astray.

Although it has always been required that there be *some* unlawful conduct committed in furtherance of the agreement (*see Van Royen v. Lacey,* 262 Md. 94, 97–98, 277 A.2d 13 (1971)), we know of no requirement that each member of the conspiracy sought to be held liable must have personally and independently committed or joined in committing such an act.

In *GAI Audio, supra,* 27 Md.App. 172, 340 A.2d 736, this Court noted that, to establish a civil conspiracy, it was neces-

sary to show "only that defendant had knowledge of an illegal enterprise and that he performed one or more 'overt acts' in furtherance thereof." We concluded that the record in that case, in fact, showed such acts by each of the defendants. Although the language that we used was, regrettably, broad enough to suggest the conclusion reached by the trial court, we did not intend to state a holding that a defendant charged with conspiracy could not be held liable unless he personally committed an unlawful overt act in furtherance of the conspiracy that itself caused harm to the plaintiff. Such a holding was not necessary in that case, as we found that each defendant had indeed committed a culpable act.

Prosser and Keeton indicate that, so long as *some act* was done in furtherance of the conspiracy, a conspirator may be held civilly liable even if he himself committed no such act. They say, in that regard (*Prosser and Keeton on Torts*, 5th ed. § 46, p. 324):

"There has been a good deal of discussion as to whether conspiracy is to be regarded as a separate tort in itself. On the one hand, it is clear that the mere agreement to do a wrongful act can never alone amount to a tort, whether or not it may be a crime; and that some act must be committed by *one of the parties* in pursuance of the agreement, which is itself a tort.... It is only where means are employed, or purposes are accomplished, which are themselves tortious, *that the conspirators who have not acted but have promoted the act* will be held liable."

(Emphasis added).

In *Reid v. Holden*, 242 N.C. 408, 88 S.E.2d 125, 130 (1955), the North Carolina Court expressed the same view, that to create civil liability for conspiracy, "there must have been an overt act committed *by one or more* of the conspirators pursuant to the scheme and in furtherance of the objective." *See also Shope v. Boyer*, 268 N.C. 401, 150 S.E.2d 771 (1966); 15A C.J.S. *Conspiracy*, § 5.

That view is consistent with the very nature of a conspiracy and with the public policy that regards concerted

action as more opprobrious than individual conduct of the same character. The principal effect of superimposing on conduct that is already unlawful in some manner the additional odium of tortious conspiracy is to make the several conspirators who fomented that conduct liable not just for their own individual acts but also for the acts committed by their fellow co-conspirators in furtherance of the conspiracy. As stated in *Western Maryland Dairy v. Chenowith,* 180 Md. 236, 243, 23 A.2d 660 (1942):

> "When individuals associate themselves together in an unlawful enterprise, any act done by one of the conspirators is in legal contemplation the act of all. The mind of each being intent upon a common object, and the energy of each being enlisted in a common purpose, each is the agent of all the others, and the acts done and words spoken during the existence of the enterprise are consequently the acts and words of all."

*See also Mills v. Murray,* 472 S.W.2d 6, 12–13 (Mo.App.1971): "Conspirators are joint tortfeasors and each is jointly and severally liable for all damages naturally flowing from the conspiracy, each defendant is made responsible for the acts of the other in pursuance of the common design." *Also Restatement (Second) of Torts,* § 876, Comment a.

■ It is not necessary, therefore, for a plaintiff to allege or prove that each member of the conspiracy committed some independent unlawful act in furtherance of the agreement, only that one or more of them committed such an act and that harm ensued to the plaintiff as a result.

■ We turn, in that light, to the averments made by appellants. The accusatory allegations contained or incorporated in Count II are sparse. Appellants aver that, in violation of his fiduciary duty, Weisman entered into an agreement with appellees to wrongfully breach that duty, and in furtherance of the conspiracy, appellees knowingly used confidential inside information communicated to them by Weisman to trade in Alleco securities, coordinated their trades with Weis-

man, joined in litigation against appellants, and thwarted appellants' attempts to settle other litigation.

Appellants do not indicate, with any specificity, how any of that conduct was unlawful. They do not contend that this conduct was in breach of any contractual or legally-imposed duty that any of the appellees had to appellants. They do not contend in the complaint that the trading was in violation of any State or Federal securities laws. It may have been, but appellants do not allege it, much less indicate in what manner it violated any of those, or any other, laws. Cases in which the possessors of confidential information have been held accountable, either civilly or criminally, have involved far more detailed and substantial allegations of wrongdoing than the complaint now before us. *See, for example, Carpenter v. United States,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987); *FMC Corp. v. Boesky,* 852 F.2d 981 (7th Cir.1988); *U.S. v. Chestman,* 947 F.2d 551 (2d Cir.1991). In short, appellants ask the court to assume an illegality simply from the averment of coordinated trading based on inside information, which we are not required to do.

Appellants do not allege in the complaint that any information supplied by any of the alleged conspirators to a Government agency was false or that the sending of such letters was itself unlawful, or, if it was, how it was unlawful. They do not contend that the institution or maintenance of the litigation about which they complain was unlawful, or in what manner it was unlawful. Nor do they indicate whether, or how, the other conduct engaged in by appellees to thwart appellants' efforts at curtailing or escaping liability on the debentures was unlawful. It is implicit from the complaint that Alleco was seeking in various ways to shed or limit its liability under debentures that it had issued and that certain holders of those debentures were objecting to those efforts. We fail to see from the complaint how appellees, as debenture holders, committed any unlawful act by joining those who opposed appellants' efforts to undermine the obligation or security of the debentures.

Appellants' theory seems to be that the disclosure of inside information is itself unlawful, which it may be, and that the use of that information by appellees constitutes the unlawful conduct in furtherance of the conspiracy. That does not suffice. As we understand the tort, the use of the information itself must be unlawful in some way, and that way must be described in the complaint. It is this description that is lacking.

There is, as well, a significant gap in establishing a connection between the alleged conduct and any harm suffered by appellants. There is no averment of what damage appellants may have suffered from the trading. It is true that confidential business information constitutes property of the company and that its premature and improper disclosure can constitute a misappropriation of corporate property, *see Carpenter v. United States, supra,* 484 U.S. at 26, 108 S.Ct. at 320, *U.S. v. Cherif,* 943 F.2d 692, 697–98 (7th Cir.1991), *FMC Corp. v. Boesky, supra,* 852 F.2d at 990–91, but appellants do not allege that as damage. Indeed, the only averment as to harm contained in Count II is that:

> "[A]lleco and Lapides have been injured in their business, property, and person. Such injury has included, but is not limited to, the substantial attorneys' fees that Alleco and Lapides have been forced to incur as a direct consequence of the litigation against them conducted or promoted by Weisman and the Defendants, the injury to Plaintiffs' business reputation, lost business opportunities, the conviction, penalties paid by, and incarceration of Plaintiff Lapides, the conviction and penalties paid by a former Alleco subsidiary, and increased expenses and other consequential damages."

The problem here is that the only clear allegation of damage arose from the litigation and letters which, as we have indicated, was not shown to be unlawful.

It is for these reasons that we shall affirm the court's dismissal of the complaint. As the circuit court indicated, when pleading tortious conduct arising from complex corporate or financial transactions, where the nature of the duties

owed, the manner of their breach, and the harm resulting are not so obvious, the pleader must make the complaint sufficiently specific so that, to an ordinary reader, the nature of the alleged tortious conduct and the harm resulting from it can be ascertained from the complaint itself. Strewing unconnected factual allegations throughout a 34–page complaint and relying on broad conclusory allegations or unaverred assumptions or suppositions to tie them together simply doesn't suffice. Appellants were warned of this when their initial complaint was dismissed.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.