665 A.2d 1038

**ALLECO INC. et al.**

v.

**The HARRY & JEANETTE WEINBERG FOUNDATION, INC. et al.**

**No. 74, Sept. Term, 1994.**

Court of Appeals of Maryland.

Oct. 11, 1995.

Dale A. Cooter (Donna S. Mangold, Cooter, Mangold, Tompert, Chapman & Cooter, P.C., all on brief), Washington, DC, for Petitioners.

Angus R. Everton (Robert C. Morgan, Diane S. Deros, Mason, Ketterman & Morgan, all on brief), Baltimore, Peter Buscemi (William L. Gardner, Laurie B. Adams Morgan, Lewis & Bockius, all on brief), Washington, DC, for Respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

ELDRIDGE, Judge.

This tort case arises out of a complex series of transactions involving an attorney, his clients and his business associates. From September 1986 to July 1988, Lawrence I. Weisman served as the attorney for the plaintiffs, Alleco Inc. and Morton M. Lapides. During this period of time, Lapides was Chairman of the Board of Alleco. In their amended complaint, the plaintiffs asserted that the defendants, the Harry and Jeanette Weinberg Foundation, Inc., Bernard Siegel, Nathan Weinberg, William Weinberg, Stanley Marks, and Kalb, Voorhis & Co., aided, abetted and conspired with Weisman to breach his fiduciary duty to the plaintiffs and to defraud the plaintiffs. These contentions were based upon allegations of insider trading in securities and of disclosing confidential information. Weisman died prior to the filing of the complaint, and his estate was not made a party to this litigation.

The Circuit Court for Prince George's County dismissed the amended complaint for failure to state a claim, and the Court of Special Appeals affirmed. *Alleco v. Weinberg Foundation,* 99 Md.App. 696, 639 A.2d 173 (1994). We granted the plaintiffs' petition for a writ of certiorari in order to consider the holdings of both courts below concerning aider and abettor tort liability and civil conspiracy tort liability.

## I.

The plaintiffs' amended complaint first contained forty-three paragraphs of detailed factual allegations and conclusions. The complaint then contained forty-three more paragraphs of additional factual allegations and conclusions divided into four counts. Count one was labeled "aiding and abetting breach of fiduciary duty," and count two was labeled "civil conspiracy to breach fiduciary duty." The third count was described as "aiding and abetting fraud," and count four was "civil conspiracy to commit fraud."

The factual allegations of the amended complaint were as follows. While serving as attorney for the plaintiffs, Weisman became privy to confidential information concerning Alleco's and Lapides's financial and legal affairs, including their plans to sell Service America, a subsidiary of Alleco. Using this "inside information," Weisman began to make substantial purchases of Alleco common stock and 9½% debentures in the month prior to the public announcement of the Service America sale.[1] Some of his purchases during this time were made through defendants Stanley Marks (Weisman's stockbroker) and Kalb, Voorhis & Co (Marks's employer). Two days following the announcement that Service America would be sold, Weisman sold some of his Alleco stock at a profit. The purchase and sale of these securities were made without the knowledge of the plaintiffs.

Weisman allegedly shared the confidential and privileged information he gained from the plaintiffs with Harry Weinberg of the Weinberg Foundation. As a result, in November 1986 the Weinberg Foundation purchased approximately $700,000.00 worth of Alleco debentures at the urging of Weisman. Soon thereafter, Harry Weinberg's two brothers, defen-

---

1. The 9½% debentures in this case were convertible senior subordinated debentures, due in the year 2010. The debentures were subordinate to prior payments of other indebtedness but could be converted into some other security, *e.g.*, common stock, at the option of the holder. *See, Alleco, Inc. v. IBJ Schroder Bank & Trust Co.*, 745 F.Supp. 1467, 1471 (D.Minn.1989).

dants Nathan and William Weinberg (directors and officers of the Weinberg Foundation), also made purchases of Alleco securities. Harry Weinberg had shared the confidential information that he received from Weisman with his brothers, and had directed them to purchase the securities.

On October 20 or 21, 1987, Lapides discussed with Weisman, *inter alia*, "a plan for the possible assignment by Alleco of the 9½% Debentures to Service America." Concerned that Alleco's assignment would release Alleco from liability to perform the obligations under the debentures, Weisman met with a Weinberg Foundation attorney and with the defendant Bernard Siegel to discuss potential legal action against Alleco, as well as additional purchases of Alleco securities. Moreover, Weisman, Harry Weinberg and representatives from the Weinberg Foundation are alleged to have contacted the largest holder of Alleco 9½% debentures, as well as the indenture trustee, to assist their efforts in preventing the debenture assignment to Service America. Despite Weisman's concern that Alleco would not "continue to be an obligor under the debentures," he continued to purchase the 9½% debentures. These purchases were made without the plaintiffs' knowledge or consent.

Meanwhile, Lapides had discussed with Weisman plans of his company, Lapides Corp., or one of its subsidiaries, to purchase all of Alleco's common stock in order to merge the two companies. In June or July 1988, Lapides Acquisition Corporation, apparently a subsidiary under the control of Lapides, publicly tendered offers for Alleco common stock at a price higher than the current market value of the stock.[2]

---

**2.** Lapides Acquisition Corporation is apparently sometimes referred to as "LP Acquisition Corporation." The United States District Court for the District of Minnesota described the relationship among the corporations as follows (*Alleco, Inc. v. IBJ Schroder Bank & Trust Co., supra,* 745 F.Supp. at 1470):

"Following the Service America Sale, Alleco had approximately $130 million in cash which it intended to commit to other lines of business. Morton Lapides, Alleco's chairman of the board and chief executive officer held 21.6% of Alleco's equity through a family

During June and July 1988, Lapides kept Weisman informed of the company's planned increases in the price it was willing to pay for the common stock. Also during this time, and because Weisman allegedly knew that the price of Alleco's common stock would increase, Weisman continued to purchase Alleco common stock. Some of these purchases were made through defendant Kalb, Voorhis & Co. By July 27, 1988, Weisman had sold for a profit all of the Alleco common stock which he had purchased. The plaintiffs were unaware of these purchases and sales "until late July 1988." During July and August 1988, the defendant Stanley Marks also purchased and sold Alleco common stock through Kalb, Voorhis & Co.

In addition to plaintiffs' assertions that Weisman and the defendants were "obtain[ing] profits fraudulently through the use of inside information," the plaintiffs allege that, in the summer of 1988, Weisman contacted the Securities and Exchange Commission, which had begun investigating Alleco and Lapides in February 1987. These communications included a letter from Weisman stating that Alleco was violating the Investment Company Act of 1940. In addition, defendant Stanley Marks sent a similar letter to the Commission "drafted by" and "at the direction of Weisman...." As a result of these communications, the Commission allegedly expanded the scope of or prolonged its investigation into Alleco. The investigation was ultimately dropped without any action having been taken against Alleco or Lapides. The plaintiffs, however, claim that these communications were not authorized, revealed confidential information gained from the attorney-client relationship between Weisman and the plaintiffs, and resulted in significant legal fees for the plaintiffs as a consequence of the Commission's investigation. During 1987 and 1988, Weisman is also alleged to have revealed confidential information con-

---

holding company, Lapides Corporation. Lapides also controlled a special class of stock which allowed him to elect a majority of Alleco's board. In May 1988, Lapides began to pursue a plan for the purchase of the Alleco common stock not held by Lapides. This resulted in the July 1988 tender offer by LP Acquisition Corporation, a Lapides subsidiary, for Alleco common stock at $10 per share."

cerning Alleco and Lapides to the Federal Bureau of Investigation and the United States Department of Justice. No action is alleged to have resulted from these communications.

On August 15, 1988, Weisman, still troubled about the assignment of the 9½% debentures to Service America and Alleco's attempt to shield itself from its obligations under the debentures, filed a "putative class action" on behalf of holders of Alleco securities against Alleco and Lapides in the United States District Court for the District of Maryland. *Gould v. Alleco*, Civ. No. S–88–2399 (D.Md.). This action is alleged to have been an attempt to have Alleco redeem the 9½% debentures at par value. Weisman and Marks, Inc., an entity operated by defendant Stanley Marks, were two of the named plaintiffs in the *Gould* suit. Weisman offered to settle the litigation if Alleco and Lapides would buy back the *Gould* plaintiffs' bonds at par value, thereby giving Weisman several million dollars of profit over his cost of the 9½% debentures held by him. Alleco and Lapides rejected this offer.

Furthermore, one week after the filing of the *Gould* suit, Weisman and the Weinberg Foundation purchased additional 9½% debentures. These purchases, the plaintiffs maintain, were part of a scheme to force Alleco into settlement negotiations by controlling the majority of the debentures. Harry Weinberg allegedly told Weisman "that it was his intention, on behalf of the Weinberg Foundation, to control over $20 million worth of Alleco bonds and force [Alleco] to pay 100 cents on the face value of the bonds."[3]

---

**3.** The plaintiffs also allege that Weisman and some of the defendants in this case continued to conspire to obtain the "upper hand" in any settlement negotiations with Alleco. These allegations arise from a separate lawsuit initiated by Alleco in the United States District Court for the District of Minnesota in 1989. In *Alleco, Inc. v. IBJ Schroder Bank & Trust Co., supra*, 745 F.Supp. 1467, Alleco requested, *inter alia*, a declaration that it was released from liability for its payment obligations under the 9½% debentures as a result of Service America's assumption of the debentures. Holding that "Alleco remains liable for the payment ... obligations of the [9½%] Debentures," the United States District Court entered judgment against Alleco. 745 F.Supp. at 1469, 1477.

Moreover, in November 1988 the Weinberg Foundation's attorney allegedly wrote a letter to the plaintiffs "threatening litigation" similar to that already instituted by Weisman. In February 1989, the federal court in the *Gould* case enjoined Weisman from future litigation against Alleco and Lapides because, as the amended complaint states, "Weisman had in fact been the attorney for Alleco and Lapides."

Other activities of the various defendants and Weisman were allegedly performed in furtherance of "their campaign to inflict injury" on Alleco and Lapides; Weisman threatened to file an involuntary bankruptcy petition against the plaintiffs; the Weinberg Foundation made other efforts to interfere with the settlement of litigation involving the debentures; the Weinberg Foundation also allegedly filed a suit against the plaintiffs in violation of a prior federal court order prohibiting such litigation, and finally, the plaintiffs allege that Weisman, speaking for himself and the Weinberg Foundation, threatened to make damaging allegations about the plaintiffs unless they agreed to repurchase the debentures according to Weisman's terms.

In summary, during Weisman's tenure as the plaintiffs' attorney, he had allegedly entered into an agreement with his friend Harry Weinberg,[4] founder of the Harry & Jeanette Weinberg Foundation, and his friend and stockbroker, Stanley Marks, who was then working at Kalb, Voorhis & Co. Their alleged agreement was (1) to aid Weisman in breaching his fiduciary duty to the plaintiffs by using confidential information obtained by Weisman in his capacity as the plaintiffs'

---

Following this suit, the indenture trustee accelerated the time for redemption of the debentures, which were originally due in the year 2010. Allegedly as a result of the holding by the Minnesota federal court, and Weisman's assurances that an appeal would not change the result, the Weinberg Foundation, Nathan Weinberg, William Weinberg, and Bernard Siegel all made additional purchases of the 9½% debentures in order to gain a controlling interest and prevent Alleco from settling with other debenture holders for less than the full value of the bonds. Following these purchases, Alleco's settlement efforts fell apart.

4. Harry Weinberg died prior to commencement of this suit.

attorney to the plaintiffs' detriment, and (2) to use "fraudulent" means to further their goal of injuring the plaintiffs financially by forcing them to pay the par value for Alleco debentures which they owned or which they planned to obtain. The other defendants were brought into the agreement later. Pursuant to the agreement, Weisman shared confidential information gained from the attorney-client relationship with the defendants. The defendants then coordinated a number of purchases and sales of Alleco stocks and debentures. In addition, the defendants allegedly assisted Weisman with "litigation efforts [against the plaintiffs] ... that were improper and aimed at extracting settlement or other payments from Alleco and Lapides; ... [they] provid[ed] information to Government authorities about Alleco and Lapides; and ... communicat[ed] with other persons and business entities ... to induce them to take actions detrimental to Alleco and Lapides."

## II.

As previously mentioned, the Circuit Court for Prince George's County held that the allegations did not sufficiently state a cause of action against the defendants and, therefore, dismissed the amended complaint. In so doing, the circuit court initially noted that there were no allegations as to how the plaintiffs were injured by the alleged disclosure of confidential information gained from the attorney-client relationship. In addition, the court held that the disclosure by Weisman of confidential information was the "only identifiable breach of duty set forth in the amended complaint," and that there were no allegations that this breach resulted in any action having been taken directly against the plaintiffs. Moreover, with respect to the alleged letter writing and litigation by the defendants, the court held that the amended complaint failed to set forth facts showing that these activities amounted to a tort committed by Weisman or any of the defendants.

The circuit court then addressed the specific counts of the amended complaint. As to Counts I and III, the aiding and abetting counts, the circuit court stated: "The Maryland

courts ... never have recognized a tort of 'aiding and abetting' the tortious conduct of another." Nevertheless, the court noted that aiding and abetting is recognized in other jurisdictions as a basis for tort liability, and that this Court may decide to recognize it. Therefore, the court analyzed the aiding and abetting counts in accordance with the following definition of aider and abettor tort liability which the court derived from cases in other jurisdictions: A defendant is civilly liable as an aider and abettor where "(1) [there is] a violation of the law (tort) by the 'principal,' (2) defendant knew about the violation, and (3) defendant gave substantial assistance or encouragement to [the principal] to engage in the tortious conduct."

Turning to count one, aiding and abetting breach of fiduciary duty, the circuit court explained the elements of the asserted tort of breach of fiduciary duty as follows:

> "A breach of fiduciary duty is shown (1) when an attorney has personal interests adverse to the clients' interests, (2) where the attorney discloses confidential information to a third party or (3) where the attorney uses confidential information for personal gain. R. Mallen & J. Smith, *Legal Malpractice*, §§ 11.1, 11.5 (1989). In order to recover for a breach of fiduciary duty, plaintiffs must prove they were *damaged* by the breach."

Moreover, the court explained that "an attorney may not reveal or use confidential information obtained during the representation even after the representation ends."

The circuit court held that a breach of fiduciary duty by Weisman, causing damage to the plaintiffs, had been sufficiently alleged only as to Weisman's communication of some confidential information to the Securities and Exchange Commission which resulted in an expanded or prolonged investigation by the Commission, thus causing the plaintiffs to incur additional legal fees. The court, however, held that the plaintiffs had failed to allege substantial assistance by the defendants. The court stated that the only allegations of substantial assistance by the defendants regarding Weisman's contact

with the Commission was that Marks provided information about the plaintiffs to the Securities and Exchange Commission as well. According to the circuit court, however, this allegation was insufficient because it contained no reference to any use of confidential information obtained as a result of Weisman's breach of fiduciary duty to the plaintiffs.

With respect to Count III, aiding and abetting fraud, the court viewed the allegations as sufficient to charge that Weisman had deceived the plaintiffs into believing that he would maintain the confidentiality of the information gained through his role as their attorney. The court held, however, that the complaint failed to allege how the defendants aided Weisman in his misrepresentations to the plaintiffs. Moreover, the court held that the plaintiffs had suffered no damage from Weisman's misrepresentations. Alternatively, the court held that any damage which they may have suffered was not a result of the defendants aiding and abetting Weisman's misrepresentation. The court explained that the allegations concerning the purchases and sales of Alleco debentures and stocks failed to state that the plaintiffs had owned the debentures or stocks at the time they were bought or sold. In addition, it was not alleged how the other "misconduct" of the defendants had any connection to the confidential information gained by Weisman.

With regard to counts II and IV, the civil conspiracy counts, the circuit court expressed the opinion that a necessary element of civil conspiracy was "that *each* defendant ... [had] committed an overt act in furtherance of the conspiracy." This requirement, according to the court, proved fatal for the conspiracy to commit fraud count (count IV). The court held that the plaintiffs had adequately pled an agreement to defraud the plaintiffs by inducing them to enter into an attorney-client relationship with Weisman when Weisman never intended to maintain the confidentiality of the relationship. Nonetheless, the court held that the complaint failed to allege that any of the defendants had committed an overt act in furtherance of Weisman's misrepresentation to the plaintiffs. The court rejected the plaintiffs' contention that the defendants'

overt acts in furtherance of the fraud consisted of their use of the confidential information, obtained by Weisman, to injure the plaintiffs. The circuit court, however, stated that the "conspiracy is to accomplish the illegal act, not to create damages from the act. The damages are a separate consideration. Therefore, the act in furtherance of the conspiracy must be an act in furtherance of the illegal act, and not one that simply creates more damages." Alternatively, the court held that "all the actions of the defendants either (1) caused damages but are not tortious or (2) are tortious as to the same third party but did not cause plaintiffs damage."

Finally, the circuit court analyzed count II, conspiracy to commit a breach of fiduciary duty. The court explained as follows:

"[T]he only actionable breach of fiduciary duty committed by Weisman was Weisman's sharing of confidential information with the SEC and the FBI during his representation of Alleco and Lapides. Therefore, only a conspiracy to commit this act would be actionable. No defendant can be liable for trading stock, receiving confidential information, or participating in lawsuits under the circumstances alleged in the amended complaint."

The court held that the only action by any of the defendants which could be taken as furthering Weisman's breach of fiduciary duty was Stanley Marks's letter to the Securities Exchange Commission charging Alleco with violating securities laws. The court found that this allegation was insufficient, primarily because it failed to say that any confidential information was disclosed in the letter.

The plaintiffs prosecuted an appeal to the Court of Special Appeals which affirmed. *Alleco v. Weinberg Foundation, supra,* 99 Md.App. 696, 639 A.2d 173. The Court of Special Appeals agreed with the circuit court that "no separate tort liability exists in this State for simply aiding and abetting someone else in committing a tort." 99 Md.App. at 700–701, 639 A.2d at 175. The Court of Special Appeals declined to consider the circuit court's alternative holding that, if Mary-

land were to recognize aider and abettor tort liability, the allegations of the complaint were insufficient.

With respect to the civil conspiracy counts, the Court of Special Appeals initially stated that "[t]he Court of Appeals has often used the term 'civil conspiracy' and has recognized it as though it were an independent tort." 99 Md.App. at 704, 639 A.2d at 177. The intermediate appellate court then held that the circuit court had erred in requiring the plaintiffs to allege that each member of the conspiracy had committed an overt act in furtherance of the conspiracy. The appellate court stated that it was sufficient to allege "that one or more of them committed such an act and that harm ensued to the plaintiff as a result." 99 Md.App. at 708, 639 A.2d at 179. The Court of Special Appeals went on to hold, however, that the plaintiffs' allegations were insufficient to show unlawful conduct which resulted in damages to the plaintiffs.

The plaintiffs then filed in this Court a petition for a writ of certiorari, challenging the various rulings by both courts below. In light of the important issues of whether Maryland law recognizes aider and abettor tort liability and of the nature of civil conspiracy tort liability, we granted the petition. We shall first address the matter of civil conspiracy tort liability, asserted in counts two and four of the amended complaint, and thereafter address the matter of aider and abettor tort liability.

### III.

The statement by the Court of Special Appeals, that civil conspiracy is recognized in Maryland as an independent tort, is simply incorrect. This Court has consistently held that " 'conspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alexander v. Evander*, 336 Md. 635, 645 n. 8, 650 A.2d 260, 265 n. 8 (1994).

Judge Alvey for this Court first explained civil conspiracy tort liability in *Kimball v. Harman and Burch*, 34 Md. 407, 409–411 (1871), as follows:

"There is no doubt of the right of a plaintiff to maintain an action on the case against several, for conspiring to do, *and actually doing*, some unlawful act to his damage. But it is equally well-established, that no such action can be maintained unless the plaintiff can show that he has in fact been aggrieved, or has sustained actual legal damage by some overt act, done in pursuance and execution of the conspiracy. *Cartrique vs. Behrens*, 30 *Law J*, (2 B.,) 168. It is not, therefore, for simply conspiring to do the unlawful act that the action lies. It is for doing the act itself, and the resulting actual damage to the plaintiff, that afford the ground of the action.

\* \* \* \* \* \*

"The fact of conspiracy is matter of aggravation, and, as we have before stated, it only becomes necessary, in order to entitle the plaintiff to recover in one action against several, that the fact of the combination or conspiracy should be proved."

Chief Judge Ogle Marbury for the Court, in *Domchick v. Greenbelt Services*, 200 Md. 36, 42, 87 A.2d 831, 834 (1952), succinctly set forth the nature of civil conspiracy tort liability:

"No action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort. *Kimball v. Harman*, 34 Md. 407, 409 [ (1871) ]. *Miller v. Preston*, 174 Md. 302, 312, 199 A. 471 [ (1938) ]."

*See also Alexander v. Evander, supra*, 336 Md. at 645 n. 8, 650 A.2d at 265 n. 8; *Van Royen v. Lacey*, 262 Md. 94, 97–98, 277 A.2d 13, 14 (1971) ("It would appear to be well settled law in this State that a conspiracy, standing alone, is not actionable"); *Green v. Wash. Sub. San. Comm'n*, 259 Md. 206, 221, 269 A.2d 815, 824 (1970); *Shamberger v. Dessel*, 236 Md. 318, 322, 204 A.2d 68, 70 (1964); *Carr v. Watkins*, 227 Md. 578, 588, 177 A.2d 841, 846 (1962) ("The act done must be one which if done by one alone would be unlawful; the fact of conspiracy is a matter of aggravation"); *Bachrach v. United Cooperative*, 181 Md. 315, 324–325, 29 A.2d 822, 827 (1943); *Miller v. Preston*,

174 Md. 302, 311–313, 199 A. 471, 475–476 (1938), and cases there cited.

Consequently, whether the counts asserting conspiracy to breach a fiduciary duty and conspiracy to commit fraud state causes of action, requires us first to determine whether the plaintiffs have adequately pled that Weisman committed the alleged tort of breach of fiduciary duty and committed fraud.

### A.

We shall first consider the plaintiffs' tort claims based on an asserted conspiracy to breach a fiduciary duty. With regard to whether Maryland law even recognizes a tort of "breach of fiduciary duty," Judge Rodowsky for the Court in *Adams v. Coates,* 331 Md. 1, 11–12, 626 A.2d 36, 41 (1993), explained as follows:

"As an alternative analysis, Adams contends that both Counts II and V, and particularly Count V, can be viewed as alleging a tort, which Adams labels as the tort of 'breach of fiduciary duty.' Restatement (Second) of Torts § 874, captioned 'Violation of Fiduciary Duty,' states the rule that '[o]ne standing in fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation.' Breach of fiduciary duty, as a tort, has been alleged by pleaders whose cases have come to this Court, and our opinions have used the term to describe claims asserted, but we have not opined on the existence of the tort or torts, or on its or their elements or rules of damages.... We need not so opine in this case.

"The only issue for decision in the matter before us that turns on whether breach of fiduciary duty between partners can be asserted as a tort involves whether punitive damages are recoverable by Adams under the proof in this case. Whether punitive damages are recoverable is not determined exclusively by the elements of the tort, but depends primarily on Maryland policy as to the award of punitive damages. We shall assume, solely for the purpose of discussion in this case, the existence of a tort, and that, under

proper proof, the tort can be the springboard for punitive damages."

Similarly, we shall assume, solely for purposes of discussion in this case, that Maryland law does recognize the tort of breach of fiduciary duty.

The Restatement (Second) of Torts § 874 (1979), defines the tort of breach of fiduciary duty as follows: "One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." From this definition we can discern the following requirements: (1) the existence of a fiduciary relationship, (2) a breach of duty owed by the fiduciary to the beneficiary, and (3) harm resulting from the breach. These requirements are in accord with the decisions in jurisdictions which have recognized tort liability for breach of fiduciary duty. *See, e.g., Moses v. Diocese of Colorado*, 863 P.2d 310, 321–323 (Colo. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2153, 128 L.Ed.2d 880 (1994); *Davis v. Church of Jesus Christ*, 258 Mont. 286, 301, 852 P.2d 640, 649 (1993). Thus, in order for the plaintiffs' complaint to withstand the motion to dismiss, it must adequately allege these three elements.

As previously indicated, the plaintiffs' allegations with respect to breach of fiduciary duty can be summarized as follows. From September 1986 to the end of July 1988, Weisman served as the plaintiffs' attorney. Weisman used confidential information he gained from the plaintiffs to trade in Alleco securities. Prior to and subsequent to the termination of the attorney-client relationship, Weisman also contacted the Securities and Exchange Commission, the Federal Bureau of Investigation and the Justice Department, in person, by phone and in writing, to share information which he possessed with respect to Alleco and Lapides and to allege that Alleco had violated securities laws. As a result, the plaintiffs allege that the Securities and Exchange Commission, which had begun investigating Alleco in February 1987, expanded or prolonged its investigation causing the plaintiffs to incur additional legal expenses. Furthermore, subsequent to the termination of the attorney-client relationship, Weisman

filed a suit against the plaintiffs on behalf of named holders of Alleco debentures. Finally, Weisman engaged in activity subsequent to the termination of the attorney-client relationship which was aimed at preventing the plaintiffs from settling another lawsuit in which they had received an adverse judgment.

In considering the sufficiency of the amended complaint, we must assume the truth of all well-pleaded relevant and material facts as well as all inferences that reasonably can be drawn therefrom. *See, e.g., Davis v. DiPino,* 337 Md. 642, 648, 655 A.2d 401, 404 (1995); *Decoster v. Westinghouse,* 333 Md. 245, 249, 634 A.2d 1330, 1332 (1994); *Garay v. Overholtzer,* 332 Md. 339, 350, 631 A.2d 429, 434 (1993); *Stone v. Chicago Title Ins.,* 330 Md. 329, 333–334, 624 A.2d 496, 498 (1993), and cases there cited. "On the other hand, any ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader." *Sharrow v. State Farm Mutual,* 306 Md. 754, 768, 511 A.2d 492, 499–500 (1986), and cases there cited. *See also Figueiredo–Torres v. Nickel,* 321 Md. 642, 647, 584 A.2d 69, 72 (1991); *Smith v. Gross,* 319 Md. 138, 141–142, 571 A.2d 1219, 1220 (1990).

The plaintiffs have adequately pled the existence of a fiduciary relationship with respect to Weisman's trading in Alleco securities during the period from September 1986 to the end of July 1988. Any trading which occurred subsequent to the termination of their attorney-client relationship is not necessarily covered by that relationship. Assuming, however, the sufficiency of the plaintiffs' complaint in this regard, the plaintiffs have failed to allege or show how Alleco or Lapides were harmed as a result of Weisman's trades. Although this Court might be able to speculate as to how the alleged insider trading might have adversely affected Alleco or Lapides, that is not our role. The plaintiffs, in the trial court, in the Court of Special Appeals, and in this Court, have utterly failed to explain how they were injured from the insider trading.

■ With respect to the allegations that Weisman communicated information to various government organizations, the plaintiffs' amended complaint failed to allege facts which would explain how Weisman breached his duty by speaking to these government organizations. The plaintiffs simply set forth the legal conclusion that "[t]hese communications [were] in violation of Weisman's attorney-client relationship...." As pointed out by Chief Judge Hammond in *Greenbelt v. Pr. George's Co.*, 248 Md. 350, 360, 237 A.2d 18, 24 (1968), "[a]llegation[s] ... or characterizations of acts, conduct or transactions ... as constituting a breach of duty without alleging facts which make them such, are conclusions of law insufficient to state a cause of action."

Thus, Weisman may have been permitted to speak with these government organizations for a number of reasons which would not have been a violation of the attorney-client relationship. Rule 1.6(b) of The Maryland Lawyers' Rules of Professional Conduct sets forth a number of grounds on which an attorney may reveal client confidences without breaching his duty to the client:

"(b) A lawyer may reveal ... information [relating to representation of a client] to the extent the lawyer reasonably believes necessary:

"(1) to prevent the client from committing a criminal or fraudulent act that the lawyer believes is likely to result in ... substantial injury to the financial interest or property of another;

"(2) to rectify the consequences of a client's criminal or fraudulent act in the furtherance of which the lawyer's services were used;

"(3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, or to establish a defense to a criminal charge, civil claim, or disciplinary complaint against the lawyer based upon conduct in which the client was involved or to respond to allegations in any proceedings concerning the lawyer's representation of the client[;]

"(4) to comply with these Rules, a court order or other law."

The bald allegation that Weisman's revelations to government agencies constituted a breach of duty is clearly insufficient.

■ As to the allegations that Weisman filed suit against the plaintiffs and interfered with settlement negotiations, neither of these activities occurred during the attorney-client relationship. Weisman filed the suit on August 15, 1988, and his alleged interference with the settlement negotiations occurred in 1989 or later. The attorney-client relationship, on the other hand, ended in July 1988. Furthermore, in neither instance is it alleged that Weisman used confidential information which he gained as a result of his prior representation of the plaintiffs.

Consequently, the plaintiffs' charge of conspiracy to breach a fiduciary duty is insufficient because the underlying "tort" was not adequately alleged.

### B.

■ In Maryland, in order to state a cause of action in fraud or deceit, a plaintiff must allege facts disclosing

"(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *Everett v. Baltimore Gas & Elec.,* 307 Md. 286, 300, 513 A.2d 882, 889 (1986); *Martens Chevrolet v. Seney,* 292 Md. 328, 333–334, 439 A.2d 534, 537–538 (1982); *James v. Weisheit,* 279 Md. 41, 44–45, 367 A.2d 482, 484–485 (1977); *Suburban Mgmt. v. Johnson,* 236 Md. 455, 460, 204 A.2d 326, 329 (1964); *Schmidt v. Millhauser,* 212 Md. 585, 592–593, 130 A.2d 572, 575–576 (1957); *Appel v. Hupfield,* 198 Md. 374, 378–379, 84 A.2d 94, 95–96 (1951); *Gittings v. Von Dorn,*

136 Md. 10, 15–16, 109 A. 553, 554–555 (1920); *Donnelly v. Baltimore Trust Co.,* 102 Md. 1, 13, 61 A. 301, 306 (1905); *Boulden v. Stilwell,* 100 Md. 543, 552, 60 A. 609, 610 (1905); *Cahill v. Applegarth,* 98 Md. 493, 499–504, 56 A. 794, 795–797 (1904); *Robinson v. Parks,* 76 Md. 118, 131–133, 24 A. 411, 412–413 (1892); *McAleer v. Horsey,* 35 Md. 439, 452–454 (1872)."

*Nails v. S & R,* 334 Md. 398, 415–416, 639 A.2d 660, 668–669 (1994). *See also Ellerin v. Fairfax Savings,* 337 Md. 216, 229–230, 652 A.2d 1117, 1123 (1995).

The plaintiffs' assertion of conspiracy to commit fraud is insufficient because it does not allege the first element of a cause of action for fraud—"that the defendant made a false representation to the plaintiff. . . ." *Nails v. S & R, supra,* 334 Md. at 415–416, 639 A.2d at 668–669.

In *Appel v. Hupfield,* 198 Md. 374, 379, 84 A.2d 94, 96 (1951), Judge Delaplaine explained for this Court as follows:

"Ordinarily fraud cannot be predicated on statements which are promissory in their nature, and therefore an action for deceit will not lie for the unfulfillment of promises or the failure of future events to materialize as predicted. Failure to fill a promise is merely a breach of contract, which must be enforced, if at all, by an action *ex contractu. Boulden v. Stilwell,* 100 Md. 543, 552, 60 A. 609 . . . [1905] )."

*See also Delmarva Drill Co. v. Tuckahoe,* 268 Md. 417, 427, 302 A.2d 37, 41 (1973); *Levin v. Singer,* 227 Md. 47, 63, 175 A.2d 423, 432 (1961).

The trial judge in the present case held, however, that Weisman's undertaking to serve as the plaintiffs' attorney included an "implied" representation to keep the information that he gained as the plaintiffs' attorney confidential, and if "he knew . . . that he was *not* going to keep their confidences, then he made a misrepresentation by agreeing to act as their attorney." Therefore, according to the circuit court, Weisman's conduct amounted to fraud.

■ This Court has held that the defendant's deliberate misrepresentation of his existing intentions, where the misrepresentation was material to the transaction giving rise to the alleged fraud, may form the basis for an action in fraud or deceit. *See Appel v. Hupfield, supra,* 198 Md. at 382, 84 A.2d at 97; *Brager v. Friedenwald,* 128 Md. 8, 33, 97 A. 515, 524 (1916); *Price v. Read,* 2 H & G 291, 294–295 (1828); *Adams v. Anderson,* 4 H & J 558, 559–560 (1819). *See also Gross v. Sussex,* 332 Md. 247, 258, 630 A.2d 1156 (1993) ("making a promise as to a matter material to the bargain with no intention to fulfill it is an actionable fraud"); *Levin v. Singer, supra,* 227 Md. at 63–64, 175 A.2d at 432; *Tufts v. Poore,* 219 Md. 1, 10–12, 147 A.2d 717, 722–723 (1959); *Ortel v. Realty Company,* 171 Md. 678, 683–684, 684, 190 A. 239, 241–242 (1937); *Councill v. Sun Ins. Office,* 146 Md. 137, 150–151, 126 A. 229, 234 (1924) ("a false promise, not intended to be performed, but made to trick and deceive another into the execution of a written instrument, is a fraud"); *Gale v. McCullough,* 118 Md. 287, 293, 84 A. 469, 471 (1912). The Court explained in *Tufts v. Poore, supra,* 219 Md. at 12, 147 A.2d at 723, as follows:

> "The gist of the fraud in such cases is ... the fraudulent intent of the promisor, the false representation of an existing intention to perform where such intent is in fact non-existent, and the deception of the promisee by such false promise."

■ Nowhere in the plaintiff's complaint is it alleged that Weisman made an actual misrepresentation to the plaintiffs. There is also no allegation that Weisman did not intend to serve as their attorney. Indeed, the complaint specifically alleges that "[f]rom September 1986 to the end of July 1988, Weisman acted as attorney for Plaintiffs Alleco and Lapides...." The plaintiffs' theory, however, accepted by the circuit court, is that Weisman's undertaking to serve as the plaintiffs' attorney included an implied representation to keep all communications between the parties confidential.

Acceptance of the plaintiffs' "implied misrepresentation" theory would extend the scope of a tort action for fraud or deceit beyond that recognized in our cases or, to the best of our knowledge, in cases elsewhere. No authority or reason is cited for this expansion of the tort action of fraud or deceit.[5] Such an extension would convert a breach of a fiduciary relationship into a "misrepresentation" giving rise to a tort action in deceit. As previously discussed, whether breach of a fiduciary relationship should be recognized as a tort in Maryland is an open question. It is an issue, however, which should be resolved directly, depending upon the policy arguments for and against recognition of the tort. It should not be adopted surreptitiously, by expanding the tort action of fraud or deceit.

We perceive no principled reason for extending the tort action of fraud or deceit as contended for by the plaintiffs.[6]

---

**5.** To the extent that the theory has been discussed elsewhere, it has been rejected. *See South County v. First Western Loan*, 315 Ark. 722, 727, 871 S.W.2d 325, 327 (1994) (breaches of a confidential or fiduciary relationship do not themselves constitute "any material false statements or misrepresentations of fact" so as to amount to fraud).

**6.** If the plaintiffs' had brought an equitable action seeking an accounting or the rescission of a contract, Weisman's alleged actions might have been sufficient to set forth constructive fraud, although we do not in this case decide that issue. *See, e.g., Ellerin v. Fairfax Savings*, 337 Md. 216, 236 n. 11, 652 A.2d 1117, 1126–1127 n. 11 (1995); *Nagel v. Todd*, 185 Md. 512, 45 A.2d 326 (1946). In equity, fraud "includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." 1 Story, *Equity Jurisprudence* § 263 (14th ed. 1918). The Court of Special Appeals in *Crawford v. Mindel*, 57 Md.App. 111, 120–121, 469 A.2d 454, 459 (1984), explained as follows:

> "Based on the fiduciary duty appellant Crawford owed to the corporation and the individual appellees, his conduct may be categorized as a classic example of constructive fraud, which usually arises from a breach of duty where a relationship of trust and confidence exists. *See Scheve v. McPherson*, 44 Md.App. 398, 408 A.2d 1071 (1979). Where, as in this case, a party is justified in believing that the other party will not act in a manner adverse or inconsistent with the reposing party's interest or welfare, constructive fraud may be found to arise from a violation of this belief. *Midler v. Shapiro*, 33 Md.App. 264, 364 A.2d 99 (1976).

As previously discussed, in order to set forth a tort claim for civil conspiracy, the plaintiffs must adequately allege the existence of the underlying tortious activity. In the present case, the plaintiffs have failed to allege adequately the underlying fraud. For this reason, the circuit court's dismissal of count III was correct.

## IV.

Turning to the aiding and abetting counts, both the circuit court and the Court of Special Appeals erred in holding that Maryland has never recognized tort liability for aiders and abettors. Maryland has expressly recognized aider and abettor tort liability. Thus, in *Duke v. Feldman*, 245 Md. 454, 457, 226 A.2d 345, 347 (1967), a tort action against an alleged aider and abettor in the commission of a battery, this Court held:

> "A person may be held liable as a principal for assault and battery if he, by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort."

*See, Purdum v. Edwards*, 155 Md. 178, 186–187, 141 A. 550, 554 (1927) (upholding aider and abettor liability in a deceit action, and pointing out that " '[w]hen several participate, they may do so in different ways at different times, and in very unequal proportions. One may plan, another may procure the men to execute, others may be the actual instruments in accomplishing the mischief but the legal blame will rest upon all' "); *Sellman v. Wheeler*, 95 Md. 751, 758, 54 A. 512, 515 (1902) ("the authorities abundantly support the proposition that all persons actually present aiding, abetting or counselling an assault are guilty as principals"). *See also Etgen v. Wash. Co. B. & L. Ass'n*, 184 Md. 412, 418, 41 A.2d 290, 292 (1945); *Martin v. Moore*, 99 Md. 41, 57 A. 671 (1904); *Newton*

---

Nonetheless, fraud which is sufficient to demand relief at equity may be "utterly irremediable at law...." *Story, supra*, at § 260.

*v. Spence,* 20 Md.App. 126, 134–135, 316 A.2d 837, 842, *cert. denied,* 271 Md. 741, 745 (1974).

Aider and abettor tort liability, for various underlying torts, has been uniformly recognized by cases elsewhere and by other authorities. *See, e.g., Cobb v. Indian Springs, Inc.,* 258 Ark. 9, 522 S.W.2d 383 (1975) (aiding and abetting negligence); *Holmes v. Young,* 885 P.2d 305 (Colo.App.1994) (aiding and abetting breach of fiduciary duty); *Halberstam v. Welch, supra,* 705 F.2d 472 (defendant held liable as an aider and abettor in an action for wrongful death); *American Family Mutual Insurance Company v. Grim,* 201 Kan. 340, 440 P.2d 621 (1968) (aiding and abetting negligence); *State ex rel. Mays v. Ridenhour,* 248 Kan. 919, 811 P.2d 1220 (1991) (aiding and abetting securities violation); *Rael v. Cadena,* 93 N.M. 684, 604 P.2d 822 (1979) (aiding and abetting battery); *Keel v. Hainline,* 331 P.2d 397 (Okl.1958) (aiding and abetting battery); *Price v. Halstead,* 177 W.Va. 592, 355 S.E.2d 380 (1987) (aiding and abetting negligence); *Winslow v. Brown,* 125 Wis.2d 327, 371 N.W.2d 417 (1985) (aiding and abetting negligence); 1 Speiser, et al., *The American Law of Torts* § 3:4, at 384–386 (1983) (aider and abettor liability "is based on the civil liability imposed at common law of those who aid others in unlawful acts, and is distinct from that which imposes liability on the basis that the parties participated in a joint venture"); 2 Hillard, *Law of Torts* at 243 (4th ed. 1874) ("a person who is present at the commission of a trespass, encouraging or exciting the same by words, gestures, looks, or signs, or who in any way or by any means countenances and approves the same, is in law deemed to be an aider and abettor, and liable as principal"); 1 Cooley, *Law of Torts* 244 (3d ed. 1906) ("All who actively participate in any manner in the commission of a tort, or who ... aid or abet commission, are jointly and severally liable therefor"); Prosser, *Law of Torts* 292 (4th ed. 1971) ("all those who ... lend aid ... to the wrongdoer ... are equally liable with him"); Restatement (Second) of Torts, *supra,* § 876(b).

One of the requirements for tort liability as an aider and abettor is that there be a "direct perpetrator of the tort."

*Duke v. Feldman, supra,* 245 Md. at 457, 226 A.2d at 347. Thus, civil aider and abettor liability, somewhat like civil conspiracy, requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable. *See, e.g., Halberstam v. Welch,* 705 F.2d 472, 477 (D.C.Cir. 1983); *Tubbs v. United Cent. Bank, N.A.,* 451 N.W.2d 177, 183 (Iowa 1990) ("The first inquiry is whether the principals ... committed tortious acts ..."); Restatement (Second) of Torts, supra, § 876.

■ Consequently, an analysis of the sufficiency of the aiding and abetting counts begins in the same place that we began in examining the conspiracy counts, *i.e.,* whether the plaintiffs adequately alleged that Weisman committed fraud and "breach of fiduciary duty" which damaged the plaintiffs. The analysis need not detain us long. As we explained earlier with respect to the conspiracy counts for fraud and breach of fiduciary duty, the plaintiffs failed to allege adequately that Weisman had committed either fraud or a breach of fiduciary duty causing harm to the plaintiffs. Since tort liability for aiding and abetting can only exist where someone has committed the actual tort, and since the allegations were insufficient to show that Weisman had committed a tort, the aiding and abetting counts were properly dismissed.

*JUDGMENT AFFIRMED.*

*PETITIONERS TO PAY COSTS.*